INTERSTATE COMMERCE COMMIS-
SION, State of Michigan and State
of Wisconsin, Plaintiffs,

v.

CHESAPEAKE & OHIO RAILWAY
CO., Defendant.

No. G77–243 CA.

United States District Court,
W. D. Michigan,
Southern Division.

July 25, 1977.

See also, 438 F.Supp. 661.

Daniel S. Linhardt, I. C. C., Washington, D. C., Robert J. Taube, Asst. Atty. Gen., State of Mich., Lansing, Mich., E. Gordon Young, Asst. Atty. Gen., State of Wis., Madison, Wis., for plaintiffs.

James L. Wernstrom, Law, Weathers, Richardson & Dutcher, Grand Rapids, Mich., Richard B. Allen, C & O Railway, Cleveland, Ohio, for defendant.

## OPINION AND ORDER

MILES, District Judge.

This action arises from C & O's decision to reduce its cross Lake Michigan transit fleet from three to two carferries during the 1977 summer sailing season. Plaintiffs oppose this reduction on the ground that a two carferry schedule will not enable the defendant to fulfill its statutory duty of providing adequate service upon reasonable demand. 49 U.S.C. § 905(a). Accordingly, they seek a preliminary injunction compelling C & O to operate all three of its carferries during the 1977 summer sailing season. The factual and legal background of this controversy is set forth in greater detail in this Court's Opinion of June 30, 1977.

The Court has conducted three extensive evidentiary hearings on this matter. Upon due consideration of the evidence adduced at the first hearing, held on May 31 and June 1, 1977, the Court concluded that the plaintiffs had not demonstrated the defendant's inability to fulfill its obligations as a

common carrier with the operation of two vessels during the month of June, 1977. On the basis of the evidence presented at the second hearing, held on June 24, 1977, the Court concluded that the defendant had shown a reasonable likelihood that it could continue to fulfill its statutory and administrative requirements with the operation of two vessels through July 25, 1977. (See Opinions dated June 27, 1977 and June 30, 1977). The subject matter of the third hearing, held on July 20, was the ability of the defendant to fulfill its statutory and administrative obligations through September 5, 1977. This Opinion addresses that issue.

At the July 20 hearing, the defendant presented undisputed evidence that its percentage of on-time arrivals during the second test period (June 22–July 13, 1977) was slightly better (80% within 15 minutes) than that achieved during its first test period (June 8–June 21, 1977) and the two middle weeks of June, 1976. (Defendant's Exhibit O; Testimony of John T. Collinson). It also demonstrated that grain shipments no longer constitute a significant portion of its cargo, a situation which appears likely to continue absent a massive international transaction similar to the 1973 Russian grain purchase. (Defendant's Exhibit P; Testimony of John T. Collinson). The carload shipments of all products in June, July, and August were roughly equivalent in 1975 and 1976. (Defendant's Exhibits Q and R, as revised by Leigh Rosenberg at the July 20 hearing).

The information most germane to the present inquiry is contained in defendant's Exhibit T, which is a computer printout of the number of loaded freight cars, empty freight cars, passengers, and automobiles carried and the number of automobiles refused service on each of the six routes for each day between June 8 and July 13, 1977. As interpreted by the defendant, Exhibit T purports to demonstrate that the C & O carferries carried 92% of the automobiles demanding service during the test period, and it projects that the defendant will be able to accommodate 96% of the demand for automobile service from mid-July through the end of August, 1977. (Defendant's Exhibit S; Testimony of John T. Collinson).

Exhibit S, however, is based on the assumption that riders desiring automobile transportation will be willing to accept another sailing 3.5 days before or after the date and time of their first preference. (Testimony of John T. Collinson). This premise represents a modification of defendant's prior assumption of maximum utilization of capacity, which the experience of this summer, as indicated by Exhibit T, shows to be in error. (Stipulation by attorney Richard B. Allen). Exhibit T also demonstrates the error of defendant's assumption of passenger willingness to accommodate themselves to available spaces within a week of their original preference, in that the number of automobiles carried varies greatly from one day to the next on each of the six routes. In addition, both loaded and empty freight cars have been transported immediately before and after sailings on which automobiles were refused in spite of C & O's policy of extending priority to passengers and automobiles over freight cars.

Moreover, Exhibit T significantly understates the actual demand for passenger automobile service. The "autos refused" column indicates only the number of advance requested reservations denied. (Testimony of John T. Collinson). It does not reflect the number of passenger automobiles which unsuccessfully sought transportation by coming directly to the docks rather than writing or phoning in advance. (Testimony of John T. Collinson). Nor, of course, can it reflect the number of people who may have been dissuaded from seeking a reservation upon learning from another unsuccessful applicant that a particular sailing was fully booked.

C & O's "autos refused" figures are not only underinclusive with respect to the total number of automobiles actually denied service; they also appear to be grossly inaccurate as to the one category they purport to represent, namely, the number of advance reservations requested and denied. The to-

tals in Exhibit T were tabulated on the basis of information recorded by C & O ticket clerks in the course of their normal duties of supplying information and accepting and denying reservations on particular sailings. Pursuant to the Court's Order, C & O distributed a revised form to its employees on or about June 24, directing them to request and record certain information about persons seeking reservations on previously booked sailings. (Testimony of William R. Neil). These forms were then collected at the end of each day and tabulated.

William R. Neil, a C & O boat dispatcher stationed at Ludington, testified that he had personally observed C & O employees failing to record this information and reprimanded them for it, and that it was his impression that this conduct was the rule rather than the exception. The Court has no difficulty in perceiving the reluctance of employees to request, and disappointed callers to provide, additional information after the prospective rider has already been advised that his reservation will not be accepted. Moreover, even when the forms were completed, Mr. Neil testified that requests for information concerning whether a particular sailing was booked were not recorded as refusals unless the caller had specifically asked for a reservation.

These practices undoubtedly resulted in a serious understatement of the number of automobiles actually refused service. They also belie the accuracy of defendant's Exhibit U, which purports to show the demand for passenger automobile service to be lower in 1977 than it was in 1975, particularly in light of the contrary testimony of C & O employees, such as William R. Neil and Richard J. Tauschek. For these reasons, the Court directs the defendant to revise its information gathering procedures with respect to persons or automobiles denied service in such a manner as to reflect greater accuracy and accord less opportunity for error or omission. This system should not impose upon present C & O personnel and should operate somewhat independently of them.

Upon careful consideration of the entire record before it, the Court concludes that the 1977 demand for C & O's Lake Michigan carferry service is at least as high as, and probably higher than, that of recent years, and that August has been and is likely to continue to be the month of heaviest demand. The Court further concludes that despite the best efforts of C & O, which the Court considers to have been extraordinarily diligent and conscientious, the plaintiffs have met their burden of demonstrating that the defendant will not be able to satisfy its statutory and administrative mandate of providing adequate service upon reasonable demand with the operation of two vessels during the month of August, 1977. Accordingly, the defendant, Chesapeake and Ohio Railway Company, is directed to institute and advertise three vessel carferry service on its cross Lake Michigan transit route beginning on August 1 and continuing through and including September 5, 1977.

IT IS SO ORDERED.